904 F.2d 699
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Tommy Lee COE, Petitioner-Appellant,
v.
Edward W. MURRAY, Director of the Virginia Department of
Corrections, Respondent-Appellee.
 No. 89-7680.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1990.
Decided May 22, 1990.
As Amended June 18, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CA-88-778-R).
 Elizabeth Dashiell Scher, Morchower, Luxton & Whaley, Richmond, Va., argued for appellant; C. David Whaley, MORCHOWER, LUXTON & WHALEY, Richmond, Virginia, on brief. Linwood Theodore Wells, Jr., Assistant Attorney General, Richmond, Va., for appellee; Mary Sue Terry, Attorney General, Richmond, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and DONALD RUSSELL and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 Tommy Lee Coe appeals from the district court's order denying relief under 28 U.S.C. Sec. 2254. Coe was convicted in state court of conspiracy to distribute marijuana. In seeking habeas corpus relief, he raises the single issue of ineffective assistance of counsel. Finding no error, we affirm.
 
 I.
 
 2
 The evidence at Coe's trial was that he and four coconspirators travelled to Indiana to purchase a large quantity of marijuana and returned with the drugs to Virginia. One of the coconspirators, James Glasscock, had informed his then-incarcerated cousin, Edward Glasscock, about the plans. Edward in turn informed Virginia State Police investigator David Riley, and this information led to the arrest of Coe and his cohorts upon their return to Virginia.
 
 
 3
 Edward Glasscock and coconspirators James Glasscock and George Goolsby testified against Coe at trial. Edward's testimony centered on a telephone conversation which took place while Coe was incarcerated in the Chesterfield County, Virginia, jail on another conviction and awaiting trial on the marijuana charges involved in this appeal. According to Edward, he and Coe had arranged a scheme which would permit Coe to speak with James Glasscock. Neither Edward nor James was incarcerated at the time. In accordance with the arrangement, Edward called the Chesterfield County jail and left a message for Coe to call his mother. Upon receipt of the message, Coe telephoned Edward's girlfriend's house where Edward had asked James Glasscock and Goolsby to come. Also present was Officer Riley who, with the assent of all present, recorded the conversation. During the conversation, Coe questioned both James Glasscock and Goolsby about what they knew about the state's evidence in the upcoming case. Coe also made a veiled suggestion that they falsify their testimony.
 
 
 4
 At trial, a transcript of the tape recording was admitted into evidence without objection. Coe was convicted of conspiracy to distribute more than five pounds of marijuana and was sentenced to twenty years imprisonment. On direct appeal, the conviction was affirmed.
 
 
 5
 Coe then filed a petition for a writ of habeas corpus before the Circuit Court of Chesterfield County, Virginia. In this petition, he claimed, inter alia, that the incriminating statements made during the telephone conversation were obtained in violation of his Sixth Amendment right to counsel and, therefore, that his trial counsel was ineffective in failing to object to the admission of the transcript of the tape recording. On July 20, 1987, the state court conducted an evidentiary hearing in which testimony was taken from Coe, his trial counsel, and officer Riley. Officer Riley testified that both Goolsby and the two Glasscocks had been assisting him with several criminal investigations and, in fact, their testimony had helped convict Coe on the charges for which he had already been convicted at the time of the phone conversation. According to Riley, Edward told him that Coe would be calling James to discuss the upcoming trial on the marijuana charges. Riley stated further that the only instruction he gave to the Glasscocks and Goolsby was to not lead the conversation but merely to follow Coe's lead.
 
 
 6
 In a letter opinion issued on November 26, 1987, the circuit court judge made the following findings:
 
 
 7
 In the case at bar, the petitioner knew that the informants were cooperating with the authorities, and that they had in fact testified against him in prior trials. The petitioner initiated the chain of events that led to the recorded telephone conversation between the petitioner and Goolsby and Glasscock, the informants. The petitioner, despite admonitions from his retained attorney, contacted one of the informants with whom he later had the taped conversation and developed the "code", whereby the informant would call the jail and leave a message for the petitioner to call his mother. This message would be a signal for the petitioner to call the informant. This plan was developed before the state police investigator decided to tape record the conversation. The police did not facilitate the plan; indeed this was arranged by the petitioner and the informant. The police initiated only the recording of the conversation that had been set up by the petitioner.
 
 
 8
 The facts of this case differ from Maine v. Moulton, 106 SC 477 (1985) [,] on which petitioner suggests the Court rely. In Maine, the informant, who as here was the defendant's accomplice, stimulated the incriminating conversation and prompted the defendant with details of the crime. In this action, Officer Riley, who recorded the conversation, testified he instructed the informants not to lead the petitioner into conversation. A review of the transcript indicates that the petitioner made the incriminating statements on his own volition without encouragement or suggestion from the informants.
 
 
 9
 The petitioner's incriminating statements were not deliberately elicited by the police because the police did not initiate the preceding actions by the petitioner that resulted in the taped conversation.
 
 
 10
 The court concluded that Kuhlmann v. Wilson, 477 U.S. 436 (1986), was dispositive and dismissed the petition. The Supreme Court of Virginia denied Coe's petition for appeal.
 
 
 11
 Having exhausted his state remedies, Coe filed a petition in the district court pursuant to 28 U.S.C. Sec. 2254. In this federal petition, Coe raised only the ineffective assistance of counsel issue. The district court deferred to the state court's factual finding that "[Coe] made the incriminating statements of his own volition without encouragement or suggestion from the informants." Finding further that Coe failed to establish the existence of one or more of the circumstances set forth in 28 U.S.C. Sec. 2254(d), the district court dismissed Coe's petition. This appeal followed.
 
 II.
 
 12
 Coe's claim of ineffective assistance of counsel hinges on his contention that the incriminating statements made during the recorded conversation were deliberately elicited by the government. He advances two related arguments in support of his contention that the state habeas court erred in its ruling that his Sixth Amendment right was not violated by the government acting through its agents, Officer Riley and the informants. First, he argues that Riley intentionally created a situation which would be likely to induce him (Coe) to make incriminating statements. Second, he asserts that one of the informants initiated conversation about the criminal case and thus led Coe to make the statements later used against him at trial. Neither line of argument is persuasive.
 
 
 13
 As the Supreme Court noted in Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986), "the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." On federal collateral review, the federal court must "accord to the state trial court's factual findings the presumption of correctness expressly required by 28 U.S.C. Sec. 2254(d)." Id. (citations omitted). To prevail on this prong of his claim, then, Coe must overcome the state court's specific finding that Coe "made the incriminating statements on his own volition without encouragement or suggestion from the informants." This he fails to do.
 
 
 14
 The state habeas court found that it was Coe who decided to contact his coconspirators to discuss the case, a decision which was made before Officer Riley initiated his plan to tape record the conversation. Unlike the situation in United States v. Henry, 447 U.S. 264 (1980), the informants were not only known to Coe, but known to him as informants. The argument that one of the informants initiated conversation about the pending charges against Coe also finds no support in the record. In fact, after James Glasscock got on the line with Coe, it was Coe who first mentioned "this thing in Indiana," an obvious reference to the pending charges. Coe has failed to show that the state court erred in finding that the government did nothing to deliberately elicit the incriminating statements.
 
 
 15
 In view of our decision that no Sixth Amendment violation arose out of the government's involvement in obtaining the recorded statements, it follows that there is no viable ineffective assistance claim. Therefore, we need not perform the analysis established for such claims in Strickland v. Washington, 466 U.S. 664 (1984). Accordingly, we affirm the judgment of the lower court.
 
 AFFIRMED